1 | WILLIAM C. STEFFIN, SB# 54626
    E-Mail: steffin@lbbslaw.com
2 | **LEWIS BRISBOIS BISGAARD & SMITH** LLP
    221 North Figueroa Street, Suite 1200
3 | Los Angeles, California  90012
    Telephone: 213.250.1800
4 | Facsimile: 213.250.7900

5 | Attorneys for Plaintiff
    BAYSIDE CAPITAL, INC.

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11 | BAYSIDE CAPITAL, INC.,                    CASE NO. CV 08-4748-CAS(EX)

12 |     Plaintiff,

13 |   v.                              **COMPLAINT FOR BREACH OF CONTRACT.**
                                                Diversity Jurisdiction;
14 | SALUS SURGICAL GROUP, LLC,                 38 U.S.C. § 1332 (a)(1)

15 |     Defendant.

16

17

18

19 | **COMPLAINT**

20 | COMES NOW Plaintiff Bayside Capital, Inc. ("Bayside") and files its

21 | Complaint against Defendant Salus Surgical Group, LLC ("Salus"), and states as

22 | follows:

23 | **PARTIES, JURISDICTION AND VENUE**

24 | 1.

25 | This is an action based on diversity of citizenship in which the damages

26 | sought are in excess of $75,000.00, exclusive of interests and costs as plaintiff and

27 | defendant are citizens of Florida and California, respectively.  38 U.S.C. §1332

28 | (a)(1).

4829-9473-4338.1

COMPLAINT

(Left margin, vertical text) LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

2.

Bayside is a corporation organized and existing under the laws of the State of Florida. Bayside's principal place of business is located at 1001 Brickell Bay Drive, Suite 2604, Miami, Florida 33131.

3.

Salus is a limited liability company organized and existing under the laws of the State of Delaware. Salus is registered and authorized to conduct business in California, and maintains its principal place of business at 132 South Rodeo Drive, Suite 300, Beverly Hills, California 90212. Salus may be served with process in this matter through its California registered agent, Paracorp Incorporated.

4.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(1) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between Bayside and Salus.

5.

This Court has personal jurisdiction over Salus because it is registered and conducts business in California, maintains its principal place of business in California, and derives substantial revenues from activities conducted in California.

6.

Venue is proper because Salus maintains an office at 132 South Rodeo Drive, Suite 300, Beverly Hills, California.

**FACTS**

7.

Upon information and belief, Salus is in the business of owning and operating outpatient surgical centers and/or a hospital.

8.

Bayside is a private equity investment firm specializing in recapitalization of and investments in middle market businesses.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

9.

In or about June 2007, Bayside and Salus entered into negotiations, whereby Bayside was to fund the comprehensive financial restructuring of Salus and its affiliates in the amount of $31,000,000.00.

10.

On June 11, 2007, the parties signed a letter of intent outlining certain terms of the prospective agreement between the parties. A true and correct copy of the letter of intent is attached hereto as Exhibit A.

11.

In August of 2007, the parties entered into a term sheet which further specified terms and conditions of the prospective agreement between the parties. A true and correct copy of the term sheet is attached hereto as Exhibit B.

12.

In the term sheet, Salus agreed to pay all financial, legal, collateral, and other due diligence investigation costs incurred by Bayside in connection with the proposed transaction between the parties.

13.

The term sheet states in pertinent part, "[i]n connection with this Transaction, [Salus] understands that Bayside will need to make certain financial, legal, collateral and other due diligence investigations and determinations. [Salus] agrees to pay and/or reimburse Bayside for all reasonable costs and expenses that are paid to third parties incurred in connection with the proposed Transaction."

14.

As specified in the term sheet, it is a legally binding and valid contract with respect to Salus' obligation to pay Bayside's costs and expenses.

/ / /

/ / /

/ / /

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

15.

Bayside incurred $503,365.68 in financial, legal, collateral, and other due diligence investigation costs and expenses in connection with the proposed transaction between the parties.

16.

The $503,365.68 in costs and expenses incurred by Bayside were reasonable and necessary in performing its due diligence on a $31,000,000.00 deal.

17.

Salus reimbursed $140,000.00 of Bayside's costs and expenses. However, Salus has failed and refused to reimburse the remaining $363,365.68 in costs and expenses.

## BREACH OF CONTRACT

18.

Bayside realleges and restates the allegations contained in paragraphs 1 through 17 of its Complaint against Salus as if fully set forth herein.

19.

Salus breached its obligations in the term sheet by failing to pay Bayside's costs and expenses.

20.

Salus' breach of contract has caused Bayside to suffer damages in the principal amount of $363,365.68.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

4829-9473-4338.1

1    WHEREFORE, Bayside demands judgment against Salus, in the total

2  principal amount of $363,365.68 together with pre and post-judgment interest as

3  allowed by law, costs, expenses, and for such other and further relief as this Court

4

5  DATED: July 18, 2008                    Respectfully submitted,

6
                                          WILLIAM C. STEFFIN
7                                         LEWIS BRISBOIS BISGAARD & SMITH LLP

8

9                                         By: _____

10                                            William C. Steffin
                                              Attorneys for BAYSIDE CAPITAL, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# EXHIBIT "A"

4825-5862-2721.1



# BAYSIDE CAPITAL
## OPPORTUNITY FUND

June 11, 2007

Mr. Eric J. Weissman
London & Pacific Healthcare, Inc.
2301 Rosencrans Avenue, Suite 3180
El Segundo, CA 90245

**VIA EMAIL:** eweissman@lphealthcare.com

Dear Mr. Weissman:

We are pleased to submit to you this Letter of Intent ("LOI") outlining the essential terms of an agreement for an affiliate of Bayside Capital, Inc. ("Bayside"), to lead the comprehensive restructuring ("Transaction") of Salus Surgical Group, LLC and its affiliates ("Salus" or the "Company").

## Bayside Overview

As you are aware, Bayside is an affiliate of H.I.G. Capital ("H.I.G."), a leading private equity investment firm specializing in acquisitions and recapitalizations of middle market businesses. Our professionals combine operations, strategic, and financial expertise in partnership with senior management to add significant value to our portfolio companies. Our investors include Goldman Sachs, Morgan Stanley, Credit Suisse, the pension funds of Dupont and Verizon and the endowments of Yale University, Columbia University and MIT. We have available in excess of $3.5 billion of committed equity capital to support our investment activities. In the last decade we have invested in over 50 companies with combined revenues of over $7 billion.

Bayside and H.I.G. have substantial experience in the healthcare space. We have successfully led investments across a wide range of health care segments: behavioral healthcare / disease management, pharmaceutical distribution, product marketing, physician staffing and cost management. Bayside was recently the largest unsecured creditor and the stalking horse bidder in the bankruptcy of Pan American Hospital and led the restructuring of that institution. We have also been recently pursuing a number of Ambulatory Surgical Center investment opportunities and are quite familiar with the space.

BAYSIDE CAPITAL
1001 BRICKELL BAY DRIVE • 26ᵗʰ FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO



EXHIBIT

*A*

6

**Transaction Terms**

Based upon our review of the materials sent to us, our exposure to the industry and our visit to the Company, we would propose the following transaction:

1. Investment Terms Bayside will provide a total of $56 million of capital [in 4 different securities] to effectuate a comprehensive restructuring of Salus and its affiliates. The overall pricing for these securities on a blended basis will be Libor + 6% with warrants for 60% of the fully diluted equity of the Company. In order to reduce complexities, Bayside is willing provide the complete amount of capital required to execute this restructuring in order to reduce time and complexity. The specific terms of the collateral securing this capital are summarized in the following appendices:
   A. SSG Term Loan
   B. Hudson Investment Term Loan
   C. S&B Term Loan
   D. CCDH Bridge Loan (if needed)

2. Hospital Restructuring A critical part of the overall transaction will be the restructuring of Century City Doctor's Hospital ("CCDH"). This investment will be subject to Bayside's approval of the final CCDH restructuring and Bayside will work with the Company to negotiate a final restructuring that is acceptable to the key parties involved. Key terms for the CCDH restructuring include:
   A. Salus Surgical Group will no longer be the general partner in CCDH and will not have any exposure to CCDH's liabilities outside of its equity ownership in CCDH to the extent permitted by law.
   B. Salus Surgical Group will invest up to $12 million in equity into CCDH to effectuate the restructuring and will own at least 51% of the equity in CCDH post-restructuring.
   C. Post-restructuring, CCDH will have less than $40 million of debt and payables (net of post-restructuring cash on hand) outside of ordinary terms (excluding disputed amounts with Siemens and Matt Construction).
   D. The disputed amounts with Siemens and Matt Construction will be clearly defined and reserved for with no exposure to the Company outside of its equity ownership in CCDH to the extent permitted by law.

3. Financing Financing for this transaction will come from third party financing sources and the committed capital pool of Bayside. We require no external approvals and will "back-stop" any third-party financing subject to terms and conditions contained herein.

**BAYSIDE CAPITAL**
1001 BRICKELL BAY DRIVE • 26th FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO

2 of 15

7

4. Timing Bayside is committed to allocating a sufficient amount of resources to close this transaction on an expedited basis. We would expect to close as soon as possible after executing this letter and entering into an exclusivity period. Timing to close will be primarily driven by negotiations to restructure CCDH. Specific Bayside related items to close include: legal due diligence, final documentation, accounting due diligence, and collateral audits.

5. Employment Agreements Bayside will enter into employment agreements with key members of current management on mutually agreeable terms. These agreements will contain compensation terms and equivalent benefits in line with industry standards. Agreements will also include typical non-compete, confidentiality, and severance provisions as are customary in agreements of this nature.

6. Management Services As a part of this Transaction, the Company will sign a management services agreement with Bayside. This agreement will include a $100,000 annual fee for the first year (increasing to $350,000 in year 2, TBD thereafter based upon the level of services needed), reimbursement of expenses and other terms typical of a transaction of this size and type.

7. Governing Law This LOI and any definitive documentation will be governed by and construed in accordance with the laws of the State of California without regard to the principles of conflict of laws.

8. Expenses In connection with this Transaction, the Company understands that Bayside will need to make certain financial, legal, collateral and other due diligence investigations and determinations. The Company agrees to pay and/or reimburse Bayside for all reasonable costs and expenses that are paid to third parties incurred in connection with the proposed Transaction.

## Exclusivity

By accepting this LOI, the Company agrees that from the date of acceptance of this LOI until 60 days after the execution of this letter, neither the Company nor its affiliates will solicit, negotiate or accept offers to acquire stock or assets of the Company. In addition, neither the Company nor its affiliates will discuss or disclose any aspect of the Company or the terms of this proposed transaction to any third party that is a potential purchaser of any of the stock or assets of the Company. During this period, the Company and its affiliates will work exclusively with Bayside toward a definitive binding agreement and will provide Bayside and its advisors and personnel with reasonable access to the books, records, properties, and personnel of the Company. This exclusivity period shall automatically extend at the end of 60 days unless specifically canceled in writing by the Company with two days notice. After 30 days, the Company and Bayside shall mutually agree on whether to terminate the exclusivity based upon whether Bayside is making good faith progress on completing a Transaction. Bayside understands that in connection with the restructuring of CCDH the Company will continue to have discussions with potential Lenders (on CCDH financing only) and local doctors who are interested in making equity investments in CCDH. The Company will keep Bayside fully updated on these discussions as they proceed.

Notwithstanding anything to the contrary herein contained, except for the provisions of this paragraph, the preceding paragraph, and section 8 which are intended to be legally binding, this LOI shall represent a non-binding letter of intent between the parties and neither Bayside nor the Company shall be liable hereunder in the event that a definitive purchase agreement is not executed.

Finally, this offer is valid until **5:00 p.m. E.S.T. on June 11, 2007,** unless executed before that time, in which case it will remain valid as per the terms set forth above.

We are very excited about proceeding with this transaction. Please call me to discuss any questions you may have.

Very truly yours,

**Bayside Capital, Inc.**

by:     John Caple                          by:     Neil Tuch
as its:  Principal                           as its:  Principal


Agreed and accepted:

**Salus Surgical Group, LLC**

by:     Randy S. Rosen, MD            by:     Scott J. Rein
as its:  Chief Executive Officer         as its:  President

## APPENDIX A

### TERM SHEET – SSG TERM LOAN

**BORROWER:** Salus Surgical Group, LLC

**GUARANTOR(S):** None

**GUARANTEED OBLIGATION:** [N/A].

**LENDER:** Bayside Capital, Inc. or its affiliate / assignee

**LOAN AMOUNT:** A non-revolving amount of $18,000,000 to be funded in a single advance on the Closing Date.

**EQUITY WARRANTS:** The Lender shall receive penny warrants to purchase 60% of the fully diluted common stock of the borrower.

**CLAWBACK OF EQUITY WARRANTS:** The Company may clawback up to one-third (i.e., 20 percentage points) of the Lender's fully diluted ownership as follows:

> ➢ 5 percentage point clawback on returns above a 2x total return (excluding interest) on the SSG Term Loan

> ➢ 10 percentage point clawback on returns above a 3x total return (excluding interest) on the SSG Term Loan

> ➢ 15 percentage point clawback on returns above a 4x total return (excluding interest) on the SSG Term Loan

> ➢ 20 percentage point clawback on returns above a 5x total return (excluding interest) on the SSG Term Loan

**PURPOSE:** The proceeds of the Loan shall principally be used to: (i) effectuate the restructuring of CCDH and (ii) provide for ongoing working capital needs of the Company.

**COLLATERAL:** The SSG Term Loan shall be secured by a perfected first priority lien in all assets of the Borrower including its equity interests, management agreements and control options in its present and future ambulatory surgical centers.

BAYSIDE CAPITAL
1001 BRICKELL BAY DRIVE • 26th FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO
6 of 15

11

**MATURITY DATE:** 5 years from the Closing Date.

**AMORTIZATON:** During the first three years of the SSG Term Loan, Borrower will make monthly payments of interest on the outstanding principal amount. [Borrower and Lender will negotiate a free cash flow sweep based upon the needs of the business.] During year four and five of the SSG Term Loan, Borrower will make monthly payments of principal and interest based on a 2 year straight-line amortization. Any remaining outstanding principal, interest, fees and expenses will be due on the Maturity Date.

**VOLUNTARY PREPAYMENT:** The SSG Term Loan may be prepaid in whole or in parts at any time prior to Maturity.

**LOAN PRICING AND FEES:**

    A.    <u>Origination Fee</u>: An origination fee of 1.00% of the Loan Amount will be due on the Closing Date. Based on the Loan Amount Limit of $18,000,000, the Origination Fee will be $180,000.

    B.    <u>Bloomberg L.P. Reference Rate</u>: Borrowings under the Facility will be charged interest at LIBOR plus the Applicable Margin as set forth below. Interest is payable monthly in arrears and is calculated on the basis of a three hundred sixty (360) day year and based on actual days elapsed.

    C.    <u>Applicable Margin</u>: [TBD]

    D.    <u>Default Margin</u>: 2% in addition to the Applicable Margin

    E.    <u>Voluntary Prepayment Fee</u>: 3% in year 1, 2% in year 2 and 1% thereafter

**FINANCIAL COVENANTS (including, but not limited to):** The loan documentation shall contain financial covenants based upon a review of Borrower's historical and projected financial statements. The specific covenants will be determined subsequent to further due diligence. All covenants will be determined by Lender in accordance with GAAP. These covenants may include, but not be limited to:

Indebtedness: At the Closing Date, the Borrower will have less than $15,000,000 of total debt and payables out of terms in addition to this SSG Term Loan, the S&B Loan and the Hudson Investment Term Loan ("Term Loans"). All other debt will be unsecured and junior in priority to the Term Loans. Any inter-company balances owed to affiliates will earn 7% PIK interest and any debt owed to Tking will have an interest rate of 10%. Lender will permit Tking to take a junior subordinated security interest in Salus Surgical Group based upon an inter-creditor agreement appropriate for a transaction of this size and type. Amortization schedules for these debts will be negotiated based upon the final financial projections and the cash flow available after secured financing. No interest or principal shall be paid on debts other than the Term Loans provided by the Lender if the Borrower is in default on any of its covenants. No additional debt shall be incurred by the Borrower without the consent of the Lender.

EBITDA: EBITDA excluding the hospital will be at least $2,000,000 in 2007 and $8,000,000 in 2008 and each year thereafter. The EBITDA test will be measured monthly on a trailing twelve month basis. Once projections for CCDH are available, we will determine appropriate covenants for the performance of CCDH and the overall consolidated business.

**BAYSIDE CAPITAL**
1001 BRICKELL BAY DRIVE • 26th FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO
8 of 15

13

## APPENDIX B

### TERM SHEET – HUDSON INVESTMENT TERM LOAN

**BORROWER:** Salus Surgical Group, LLC

**GUARANTOR(S):** N/A.

**GUARANTEED OBLIGATION:** N/A.

**LENDER:** Bayside Capital, Inc. or its affiliate / assignee

**LOAN AMOUNT:** A non-revolving amount of approximately $5,000,000 to be funded in a single advance on the Closing Date.

**PURPOSE:** The proceeds of the Hudson Investment Term Loan shall be used to execute the purchase option of the Borrower to acquire a 10% equity stake in Hudson Crossing Ambulatory Surgical Center ("Hudson") from an existing financial partner in Hudson.

**COLLATERAL:** The Facility shall be secured by a perfected first priority lien in the 10% equity stake in Hudson and a perfected second priority lien in all assets of the Borrower.

**MATURITY DATE:** 5 years from the Closing Date.

**AMORTIZATON:** The Borrower will make monthly payments of principal and interest based on a 5 year straight-line amortization. In addition, any and all cash flows from the 10% Hudson equity stake in excess of the interest and straight line amortization amount shall be used on a monthly basis to pay down the principal of the Loan.

**VOLUNTARY PREPAYMENT:** The Borrower can voluntarily pre-pay the Loan at any time after pre-paying SSG Term Loan.

**LOAN PRICING AND FEES:**

    A.    Origination Fee: An origination fee of 2.25% of the Loan Amount will be due on the Closing Date. Based on an estimated Loan Amount of $5,000,000, the Origination Fee would be $112,500.

    B.    Bloomberg L.P. Reference Rate: Borrowings under the Facility will be charged interest at LIBOR plus the Applicable Margin as set forth below. Interest is payable monthly in arrears and is calculated on the basis of a three hundred sixty (360) day year and based on actual days elapsed.

    C.    Applicable Margin: [TBD]

BAYSIDE CAPITAL
1001 BRICKELL BAY DRIVE • 26th FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO
9 of 15

14

D.    <u>Default Margin</u>: 2% in addition to the Applicable Margin

E.    <u>Voluntary Prepayment Fee</u>: 3% in year 1, 2% in year 2 and 1% thereafter

**FINANCIAL COVENANTS (including, but not limited to):** The loan documentation shall contain financial covenants based upon a review of Borrower's historical and projected financial statements. The specific covenants will be determined subsequent to further due diligence.  All covenants will be determined by Lender in accordance with GAAP.  These covenants may include, but not be limited to:

Minimum Monthly equity payments from the 10% equity stake in Hudson of at least $100,000 measured on a rolling three month basis.

Minimum Annual Pre-Tax Income at Hudson of at least $16,500,000 annually measured on a monthly trailing twelve month basis.

**BAYSIDE CAPITAL**
1001 BRICKELL BAY DRIVE • 26ᵗʰ FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO
10 of 15

15

## APPENDIX C

### TERM SHEET – S&B TERM LOAN

**BORROWER #1:** S&B Surgical Center ("S&B")

**GUARANTOR(S):** Salus Surgical Group, LLC

**GUARANTEED OBLIGATION:** Total Loan Amount

**LENDER:** Bayside Capital, Inc. or its affiliate / assignee

**LOAN AMOUNT:** A non-revolving amount of $9,000,000 to be funded in a single advance on the Closing Date.

**PURPOSE:** The proceeds of the Loan shall be used to refinance the Fortress facility secured by the portfolio of accounts receivables related to workers compensation medical treatments provided by the Borrower prior to December 31, 1999 and still unresolved as of the Closing Date ("Workers Comp AR").

**COLLATERAL:** The Facility shall be secured by a perfected first priority lien in all assets of S&B including its current accounts receivable, any inter-company notes, its Workers Comp AR and a junior security interest in all the assets of Salus Surgical Group.

**MATURITY DATE:** 5.75 years from the Closing Date.

**AMORTIZATON:** The Lender will receive PIK interest payments for the first four months, except to the extent that the collection of aged workers compensation receivables exceeds $400,000 per month; any amount over $400,000 per month shall be used to pay interest and/or principal.

The Lender will receive cash interest payments and no principal payments for the second four months, except to the extent that collections of aged workers compensation receivables exceed $300,000 per month; any amount over $300,000 per month shall be used to pay principal.

Starting in the ninth month, the Lender will receive monthly payments of principal and interest based on a 5 year straight-line amortization from months 9 through 69, except to the extent that collections of aged workers compensation receivables exceeds $400,000 per month; any amount over $400,000 per month shall be used to prepay principal. If the S&B Term Loan is in default then all of the cash flows from the Workers Comp AR shall be swept. Any remaining outstanding principal, interest, fees and expenses will be due on the Maturity Date.

**VOLUNTARY PREPAYMENT:** The Borrower can voluntarily pre-pay the S&B Term Loan at any time.

**BAYSIDE CAPITAL**
1001 BRICKELL BAY DRIVE • 26ᵗʰ FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO

11 of 15

**LOAN PRICING AND FEES:**

A.  Origination Fee:  An origination fee of 2.25% of the Loan Amount will be due on the Closing Date.  Based on the Loan Amount of $9,000,000, the Origination Fee will be $202,500.

B.  Bloomberg L.P. Reference Rate:  Borrowings under the Facility will be charged interest at LIBOR plus the Applicable Margin as set forth below.  Interest is payable monthly in arrears and is calculated on the basis of a three hundred sixty (360) day year and based on actual days elapsed.

C.  Applicable Margin:  [TBD]

D.  Default Margin: 2% in addition to the Applicable Margin

E.  Voluntary Prepayment Fee:  3% in year 1, 2% in year 2 and 1% thereafter

**FINANCIAL COVENANTS (including, but not limited to):**  The loan documentation shall contain financial covenants based upon a review of Borrower's historical and projected financial statements. The specific covenants will be determined subsequent to further due diligence.  All covenants will be determined by Lender in accordance with GAAP.  These covenants may include, but not be limited to:

Workers Comp AR Cash Collections:  Cash collections on Workers Comp AR shall be at least $400,000 a month through the life of the loan.  This test will be measured on a monthly rolling three month average calculation.

Minimum EBITDA:  EBITDA for S&B Surgery Center will be breakeven in 2007 and at least $3,000,000 annually in 2008 and thereafter.  This test will be measured on a monthly rolling latest twelve months basis.

- - - - - - - - - - - - - - - - - - - - -

**BORROWER #2:** Salus Surgical Group LLC

**GUARANTOR(S):** S&B Surgical Center

**GUARANTEED OBLIGATION:** Total Loan Amount

**LENDER:** Bayside Capital, Inc. or its affiliate / assignee

**LOAN AMOUNT:** A non-revolving amount of approximately $4,000,000 to be funded in a single advance on the Closing Date.

BAYSIDE CAPITAL
1001 BRICKELL BAY DRIVE • 26th FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO
12 of 15


17

**WRITE DOWN OF SALUS SURGICAL GROUP LLC DEBT TO S&B:**  S&B shall forgive approximately $5.5 million of inter-company debt receivable from Salus Surgical Group.

**PURPOSE:**  The proceeds of the Loan shall be used to refinance the Fortress facility secured by the portfolio of accounts receivables related to workers compensation medical treatments provided by the Borrower prior to December 31, 1999 and still unresolved as of the Closing Date ("Workers Comp AR").

**COLLATERAL:**  The Facility shall be secured by a perfected junior secured lien in all assets of Salus Surgical Group and the S&B aged workers compensation receivables. [Note that we will need to complete appropriate due diligence on whether a loan to Salus can be secured by assets of S&B. If this doesn't work, then this note will need to be held at S&B with an increase in the inter-company note]

**MATURITY DATE:**  5 years from the Closing Date.

**AMORTIZATON:**  During the first year of this loan, Borrower will make monthly payments of interest on the outstanding principal amount.  During years two through five of this Term Loan, Borrower will make monthly payments of principal and interest based on a 4 year straight-line amortization.  Any remaining outstanding principal, interest, fees and expenses will be due on the Maturity Date.

**VOLUNTARY PREPAYMENT:**  3% in year 1, 2% in year 2 and 1% thereafter.

**LOAN PRICING AND FEES:**

    A.   Origination Fee:  An origination fee of 2.25% of the Loan Amount will be due on the Closing Date.  Based on the Loan Amount of $4,000,000, the Origination Fee will be $90,000.

    B.   Bloomberg L.P. Reference Rate:  Borrowings under the Facility will be charged interest at LIBOR plus the Applicable Margin as set forth below. Interest is payable monthly in arrears and is calculated on the basis of a three hundred sixty (360) day year and based on actual days elapsed.

    C.   Applicable Margin:  [TBD]

    D.   Default Margin: 2% in addition to the Applicable Margin

**FINANCIAL COVENANTS (including, but not limited to):**  The loan documentation shall contain financial covenants based upon a review of Borrower's historical and projected financial statements. The specific covenants will be determined subsequent to further due diligence.  All covenants will be determined by Lender in accordance with GAAP. These covenants will be similar to the SSG Term Loan.

## APPENDIX D

### TERM SHEET – CCDH BRIDGE LOAN

**BORROWER:** Century City Doctor's Hospital

**GUARANTOR(S):** Salus Surgical Group, LLC

**GUARANTEED OBLIGATION:** Any outstanding amounts

**LENDER:** Bayside Capital, Inc. or its affiliate / assignee

**LOAN AMOUNT:** A revolving amount of up to $20,000,000 to be funded based upon a borrowing base to be agreed upon.

**PURPOSE:** The proceeds shall be principally be used to (i) refinance the existing facility from Fortress and (ii) provide for ongoing working capital needs of the Company.

**COLLATERAL:** The CCDH Bridge Loan shall be secured by a perfected first priority lien in all assets of the Borrower including its accounts receivables and lease on its current location.

**MATURITY DATE:** 1 year from the Closing Date.

**VOLUNTARY PREPAYMENT:** The CCDH Bridge Loan may be prepaid in whole or in parts at 103% of the principal amount at any time prior to Maturity.

**LOAN PRICING AND FEES:**

A. <u>Origination Fee</u>: An origination fee of 2.25% of the maximum Loan Amount will be due on the Closing Date. Based on the Loan Amount Limit of $20,000,000, the Origination Fee will be $450,000.

B. <u>Bloomberg L.P. Reference Rate</u>: Borrowings under the Facility will be charged interest at LIBOR plus the Applicable Margin as set forth below. Interest is payable monthly in arrears and is calculated on the basis of a three hundred sixty (360) day year and based on actual days elapsed.

C. <u>Applicable Margin</u>: [TBD] for months 1 to 3, increasing by 1% for each month thereafter

D. <u>Default Margin</u>: 2% in addition to the Applicable Margin

E. <u>Unused Line Fee</u>: 0.25%

**BAYSIDE CAPITAL**
1001 BRICKELL BAY DRIVE • 26ᵗʰ FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO
14 of 15

19

**FINANCIAL COVENANTS (including, but not limited to):** The loan documentation shall contain financial covenants based upon a review of Borrower's historical and projected financial statements. The specific covenants will be determined subsequent to further due diligence. All covenants will be determined by Lender in accordance with GAAP. These covenants may include, but not be limited to:

Indebtedness

Minimum Fixed Charge Coverage Ratio

Minimum EBITDA

BAYSIDE CAPITAL
1001 BRICKELL BAY DRIVE • 26ᵗʰ FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO
15 of 15

20

# EXHIBIT "B"

4825-5862-2721.1



## SALUS BINDING TERM SHEET

**CO-BORROWER & CROSS GUARANTOR #1:** Salus Surgical Group, LLC ("Salus")

**CO-BORROWER & CROSS GUARANTOR #2:** S&B Surgical Center ("S&B")

**LENDER:** Bayside Capital, Inc. or its affiliate / assignee ("Bayside")

**LOAN AMOUNT:** A non-revolving amount of $31,000,000 to be funded in a single advance on the Closing Date with $22,000,000 being lent to Salus and [$9,000,000] being lent to S&B.

**CLOSING DATE:** Bayside, Salus and S&B will use all reasonable efforts to close by September 28, 2007.

**PURPOSE:** The proceeds of the Loan to Salus shall principally be used to: (i) repay the current Fortress facility at Salus, (ii) effectuate the restructuring of CCDH and (iii) provide for ongoing working capital needs of Salus. The proceeds of the Loan to S&B shall be used to refinance the Fortress facility at S&B.

**COLLATERAL:** The Facility shall be secured by a perfected first priority lien in all assets of both Salus and S&B. These assets specifically include the accounts receivable, inter-company notes, the workers comp AR at S&B as well as the equity interests, management agreements and control options in its present and future ambulatory surgical centers at Salus.

**MATURITY DATE:** 5 years from the Closing Date.

**WRITE DOWN OF SALUS SURGICAL GROUP LLC DEBT TO S&B:** S&B shall forgive approximately $7.5 million of inter-company debt receivable from Salus Surgical Group.

**NEW SALUS UNITS:** Salus shall issue to Lender warrants for 100% of the Series A Salus Units and the current Salus unit holders shall receive 100% of the Series B Salus Units. The Series A units shall receive the first $22,000,000 of distributions. The Series B units shall receive the next $11,000,000 of distributions. All distributions after $33,000,000 shall be split 65% to Series A and 35% to series B, except as provided herein:

**BAYSIDE CAPITAL**
1001 BRICKELL BAY DRIVE • 26ᵗʰ FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO

1 of 6



EXHIBIT

**B**

**CLAW-BACK OF EQUITY WARRANTS:** The Company may claw-back up to 25 percentage points of the Lender's fully diluted ownership as follows:

➤ 10 percentage point claw-back on equity distributions after $44,000,000 to Bayside

➤ 15 percentage point claw-back on equity distributions after $66,000,000 to Bayside

➤ 20 percentage point claw-back on equity distributions after $88,000,000 to Bayside

➤ 25 percentage point claw-back on equity distributions after $110,000,000 to Bayside

**SALUS AMORTIZATON:** During the first two years of this loan, Salus will make monthly payments of interest on the outstanding principal amount. During years three through five of this Term Loan, Salus will make monthly payments of principal and interest based on a 4 year straight-line amortization. Any remaining outstanding principal, interest, fees and expenses will be due on the Maturity Date. Salus and Lender will negotiate a free cash flow sweep based upon the needs of the business.

**S&B AMORTIZATON:** The Lender will receive cash interest payments and no principal payments for the first eight months, except to the extent that the collection of aged workers compensation receivables, less collection fees pay to collect such receivables ("Net Aged WC Receivables"), exceeds $400,000 per month; any amount over $400,000 per month shall be used to pay interest and/or principal.

Starting in the ninth month, the Lender will receive monthly payments of principal and interest based on a straight-line amortization from months 9 through 60, except to the extent that collections of Net Aged WC Receivables exceed $250,000 per month; any amount over $250,000 per month shall be used to prepay principal. If the S&B Term Loan is in payment default, then all of the cash flows from the Workers Comp AR shall be swept. In the event of an uncured non-payment default, then all of the Net Aged WC Receivables shall be swept. Any remaining outstanding principal, interest, fees and expenses will be due on the Maturity Date.

**VOLUNTARY PREPAYMENT:** 3% in year 1, 2% in year 2 and 1% in year 3, and zero thereafter.

**LOAN PRICING AND FEES:**

A.  Origination Fee: An origination fee of 2.25% of the Loan Amount will be due on the Closing Date. Based on the Loan Amount of $31,000,000, the Origination Fee will be $698,000.

B.  Bloomberg L.P. Reference Rate: Borrowings under the Facility will be charged interest at LIBOR plus the Applicable Margin as set forth below. Interest is payable monthly in arrears and is calculated on the basis of a three hundred sixty (360) day year and based on actual days elapsed.

BAYSIDE CAPITAL
1001 BRICKELL BAY DRIVE • 26ᵗʰ FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO

2 of 6

22

C.  <u>Applicable Margin</u>: 8% plus the Default Margin if the Loan is in default

D.  <u>Default Margin</u>: 4%

E.  <u>Facility Administration Fee</u>: Bayside shall be entitled to a facility administration fee of $100,000 for the first year and increasing to $350,000 for years two to five in addition to reimbursement of expenses and other terms typical of a transaction of this size and type.

**FINANCIAL COVENANTS (including, but not limited to)**: The loan documentation shall contain financial covenants based upon a review of Co-Borrower's historical and projected financial statements. The specific covenants will be determined subsequent to further due diligence. All covenants will be determined by Lender in accordance with GAAP. These covenants may include, but not be limited to:

Salus EBITDA: Excluding CCDH, EBITDA will be at least [$1,500,000] in 2007 and [$5,000,000] in 2008 and [$10,000,000] each year thereafter. The EBITDA test will be measured monthly on a trailing twelve month basis. Once projections for CCDH are available, we will determine appropriate covenants for the performance of CCDH and the overall consolidated business. [We will need to understand these covenant levels in detail given their decline and the fact that interest coverage in 2008 will now be tight]

Salus Indebtedness: At the Closing Date, Salus Borrower will have less than $13,000,000 of total debt and payables out of terms in addition to this Loan. Except as otherwise described below, all other debt will be unsecured and junior in priority to the Term Loans. Any inter-company balances owed to affiliates will earn 7% PIK interest and any debt owed to Tking will have an interest rate of 10%. Lender will permit Tking to take a junior subordinated security interest in Salus Surgical Group based upon an inter-creditor agreement appropriate for a transaction of this size and type. Amortization schedules for these debts will be negotiated based upon the final financial projections and the cash flow available after secured financing. No interest or principal shall be paid on debts other than the Term Loans provided by the Lender if the Borrower is in default on any of its covenants. No additional debt shall be incurred by the Borrower without the consent of the Lender.

S&B EBITDA: EBITDA for S&B Surgery Center will be breakeven in 2007 and at least $3,000,000 annually in 2008 and thereafter. This test will be measured on a monthly rolling latest twelve months basis.

**BAYSIDE CAPITAL**
1001 BRICKELL BAY DRIVE • 26th FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO
3 of 6

23

**S&B Workers Comp AR Cash Collections:**  Net Aged WC Receivables cash collections on Workers Comp AR shall be at least $300,000 a month through the life of the loan.  This test will be measured on a monthly rolling three month average calculation.

**CCDH EBITDAM:** CCDH EBITDAM will be at least $525,000 in Q4, 2007, $5,000,000 in 2008 and, $9,000,000 in 2009 and each year thereafter.  The EBITDAM test will be measured monthly on a trailing twelve month basis.

**CCDH Cross Default:**  CCDH will not be in default to any material creditor including its senior lender and major equipment lessor.

**EMPLOYMENT AGREEMENTS:** Salus will enter into employment agreements with key members of current management on mutually agreeable terms. These agreements will contain compensation terms and equivalent benefits in line with industry standards. Agreements will also include typical non-compete, confidentiality, and severance provisions as are customary in agreements of this nature.

**OTHER DOCUMENTATION:**  Bayside will need to review and approve the debt and equity documents for Salus, S&B, CCDH and the owned ASCs prior to closing this transaction.  In addition, Bayside will need to review and approve the documents associated with the CCDH restructuring.

**GOVERNING LAW:** This LOI and any definitive documentation will be governed by and construed in accordance with the laws of the State of California without regard to the principles of conflict of laws.

BAYSIDE CAPITAL
1001 BRICKELL BAY DRIVE • 26ᵗʰ FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO
4 of 6

24

## Exclusivity

By accepting this Term Sheet, the Company agrees that from the date of acceptance of this Term Sheet until 45 days after the execution of this Term Sheet, neither the Company nor its affiliates will solicit, negotiate or accept offers to acquire stock or assets of the Company or provide any financing to the Company. In addition, neither the Company nor its affiliates will discuss or disclose any aspect of the Company or the terms of this proposed transaction to any third party that is a potential purchaser of any of the stock or assets of the Company or a potential provider of financing. During this period, the Company and its affiliates will work exclusively with Bayside toward a definitive binding agreement and will provide Bayside and its advisors and personnel with reasonable access to the books, records, properties, and personnel of the Company. This exclusivity period shall automatically extend at the end of 45 days unless specifically canceled in writing by the Company with two days notice. Bayside understands that in connection with the restructuring of CCDH the Company will continue to have discussions with potential Lenders (on CCDH financing only), local doctors and other investors who are interested in making equity investments in CCDH who will invest in a minority equity interest in CCDH in a manner that is consistent with and in conjunction with the Bayside transaction. The Company will keep Bayside fully updated on these discussions as they proceed.

In connection with this Transaction, the Company understands that Bayside will need to make certain financial, legal, collateral and other due diligence investigations and determinations. The Company agrees to pay and/or reimburse Bayside for all reasonable costs and expenses that are paid to third parties incurred in connection with the proposed Transaction.

Notwithstanding anything to the contrary herein contained, except for the provisions of this paragraph and the two preceding paragraphs which are intended to be legally binding, this Term Sheet shall constitute a binding Term Sheet but not a definitive document. Neither Bayside nor the Company, shall be liable hereunder in the event that a definitive document is not executed and both parties acknowledge that there are numerous material terms that are not part of this term sheet. Specific conditions to precedent to definitive documentation include:

1. Final definitive documentation in Bayside's sole discretion
2. Approval of final terms and documentation for the CCDH restructuring plan in Bayside's sole discretion
3. Final projections and financial covenants for Salus, S&B and CCDH that are acceptable to Bayside in its sole discretion

We also believe that there are several issues that need to be immediately addressed in the next week in order to hit the proposed closing date. These are as follows:

1. Salus executive management compensation and employment agreements
2. Detailed financial covenants
3. Revised CCDH restructuring balance sheet / sources and uses of cash

BAYSIDE CAPITAL
1001 BRICKELL BAY DRIVE • 26th FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO
5 of 6

25

4. Plan to raise additional equity for CCDH and the pro-forma equity structure including the critical physicians and current equity holders

Completed due diligence items:
1. Business review of Salus and the ASC market
2. Financial review of Salus and the ASCs
3. Initial accounting due diligence on Salus, the ASCs and CCDH
4. Preliminary legal review
5. Full collateral evaluation of the S&B AR

Open due diligence items:
1. Full legal review and documentation
2. Full tax review and finalizing the account due diligence
3. Financial and Business review of the restructuring of CCDH, including both the financial projections and the restructuring plan
4. Monitoring the financial performance and volumes of Salus and CCDH

Finally, this term sheet is valid until **5:00 p.m. E.S.T. on August 21, 2007**, unless executed before that time, in which case it will remain valid as per the terms set forth above.

We are very excited about proceeding with this transaction. Please call me to discuss any questions you may have.

**Bayside Capital, Inc.**

by: _____ John Caple
as its: Principal

by: _____ Neil Tuch
as its: Principal


Agreed and accepted:

**Salus Surgical Group, LLC**

by: _____ Randy S. Roken, MD
as its: Chief Executive Officer

by: _____ Scott J. Kein
as its: President

**BAYSIDE CAPITAL**
1001 BRICKELL BAY DRIVE • 26th FLOOR • MIAMI, FL 33131 • TEL: (305) 379-8686
MIAMI • ATLANTA • BOSTON • SAN FRANCISCO
6 of 6

26

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

## Central District of California

Bayside Capital, Inc.

**SUMMONS IN A CIVIL CASE**

V.

Salus Surgical Group, LLC

CASE NUMBER: *CV08-4748-CAS (E)*

TO: (Name and address of Defendant)

Salus Surgical Group, LLC
c/o Paracorp Incorporated, Registered Agent
2804 Gateway Oaks Dr Ste 200
Sacramento, CA 95833

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

William C. Steffin, Esq.
Lewis Brisbois Bisgaard & Smith LLP
221 N. Figueroa Street, Suite 1200
Los Angeles, CA  90012

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

SHERRI R. CARTER

CLERK

(By) DEPUTY CLERK

DATE  7/18/08

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| | |
|---|---|
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

      I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____   _____
              Date               *Signature of Server*

                         _____
                         *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.